## Scott *et al.*, Appellants, *v.* James *et al.*

P. Pressler by his will directed that his property should be kept together in the hands of his executors, until his only daughter J. P. became of lawful age or married, then to be equally divided between his wife and daughter; but in case the daughter died without issue, then the will gave to the wife all the property, real and personal.

Pressler died in 1824, and in 1826 Mrs. Pressler intermarried with one James, and the appellees are the only issue of that marriage. Miss Pressler died in 1832, at the age of fifteen. James died in 1831, and in 1832 his widow married Scott one of the appellants. In 1834 Mrs. Scott died, leaving the appellant the survivor. The appellees sought a recovery of a portion of the property left by Pressler to their mother; decree in their favor by the chancellor.

*By the Court:*—The wife of the testator had a vested legacy in the property, and her second husband, James, acquired a right to it by marriage.

James took possession of the property on his marriage with the widow, and claimed the same in virtue of the marriage: *Held*, to be a sufficient possession to vest the property in the husband, in as much as the property was by the will, to be kept together, until the daughter came of age or married.

The appellants inherited from their father two-thirds of their mother's half of Pressler's property, which was equal to two-sixths, or one-third of the whole property.

APPEAL from the court of chancery.

Peter Pressler, after having made his will, died leaving his wife Elizabeth, and his daughter Jaily Ann, surviving him. He disposed of his property as follows: "And as touching such wordly estate wherewith it hath pleased God to bless me in this life, I devise and dispose of the same in the following manner and form, viz: It is my will and desire, that after my funeral expenses and all my lawful debts are paid and discharged, that the rest, residue and remainder of my property be kept together in the hands of my executors, until my only daughter, Jaily Ann Pressler, becomes of lawful age or marries, and it is then my will and desire, that whatever property they may be possessed of, may be equally divided between my loving wife Elizabeth

Pressler, and my said daughter Jaily Ann Pressler, and in case my said daughter should die without issue, it is my will and desire that my wife, Elizabeth Pressler, enjoy all my property, real and personal, to herself and her heirs forever." He also appointed his wife executrix, and James Buford executor. Buford qualified, but the wife renounced. Pressler died in 1824, and in 1826 his wife Elizabeth intermarried with Robert James, who took and kept possession of the property until his death; and the appellees, Narcissa James and Margaret James, are the only issue of that marriage. James died in 1831, and in 1832, his widow intermarried with the appellant Scott, and died in October 1834, leaving Scott surviving.

In 1832, after the marriage of Scott with her mother, Miss Pressler died at the age of fifteen years. The appellees filed their bill for the purpose of recovering a portion of the property left by Pressler to their mother, and pray that the will may be construed.

The appellant in his answer admits all the facts stated in the bill, but denies the right of the complainants to any of the property; because he alleges that the disposition of the property by the will of Pressler, was contingent and did not take effect until the death of Miss Pressler, when her mother became entitled to the whole of it, which happening during his coverture, vested the right in him; and secondly, that even if this is not the true construction of the will, yet the complainants are not entitled to recover, because James, their father, never reduced his wife's share of the property to possession.

The chancellor decreed in favor of the complainants below; appeal to this court.

Grayson, for the appellant.

1. It is urged that Robert James never had that possession of the interest to which the wife was entitled under the will as vested him with such a right as, upon his death, enabled his distributees to assert successfully a claim thereto.

Although the husband possess himself, as executor or administrator, or in right of his wife as such, of property, to a share of which his wife is entitled, this is not such a possession as to vest

[Scott *et al.,* Appellants, *v.* James *et al.*]

in him *jure mariti;* and if she dies before proper division is made, it will go to her heirs. Guardian of Ellens *v.* Hughes, 3 Dessausure, 161; Administrator of Byrne *v.* Stewart's Administrator, 3 Dessausure, 148; 10 Yerger, 190; 2 Call's Rep. 376.

A brother devised to his sister the residue of his estate. One of them married, and her husband died before the will was proved, or any division made of her brother's estate. The husband not having reduced the estate to possession, his representatives could not take it, but it survived to the wife. Administrators of Harleston *v.* Executors of Lynch, 1 Dessausure, 244.

The case in 3 Dessaus. Rep. 155, Elms *v.* Hughes, is an authority directly opposed to the claim of the complainants. That was a case where one dying intestate, left a widow and children, a plantation and negroes. The widow administered on the estate of her deceased husband, and then married a second husband. She and her second husband remained on the plantation, and the negroes were in his possession and use. The second husband died, and his personal representatives set up a claim in opposition to the wife's survivorship. The chancellor who decided the cause, said: "It is insisted that the right of the wife to a third part of the personal estate, was not a chose in action; it was a right to an undivided portion of negroes actually in possession of her that the writ of partition which was necessary, was merely to divide property in possession, and this was totally different from a chose in action." The answer given to this objection by the chancellor was, that "as a writ of partition was necessary to divide the personal estate to enable Mr. Elms to hold his wife's share as husband, and as whenever a suit is necessary to establish or to give effect to a right, it is a right of action; and as Mr. Elms died before his wife, the right and the possession was not so vested in Mr. Elms, as husband, as to establish his property in the personal estate, but the same survived to his widow."

After the marriage of Robert James, the ancestor of the complainants, with Mrs. Pressler, to the period of his death, there was no time when he could claim any particular part of the property in question as his own, and say this is mine and that is not mine. His right was inchoate, to be determined and ascertained

by partition; separating the interest of the infant daughter of Peter Pressler.

The principle here insisted on remains the same, though for a portion of the time of James's marriage with the widow, there was no administration on the estate of Peter Pressler.

The infant daughter of Pressler being equally entitled to distribution, there was no mode by which James could obtain possession of the interest to which the wife was entitled, but by suing for partition. And when the husband is driven to a suit to obtain possession of his wife's personal property, the authorities all regard such property to be a chose in action, which survives to the wife upon the death of the husband. The books hold but one language on this subject, and will not allow, without a violation of principle, the claim of the complainants to prevail.

Henderson and Boyd, *contra.*

We believe the merits of this case turn on the construction of Peter Pressler's will.

We contend, by the will, that the testator disposed of all his estate—that he disposed of it as a bequest of present, and immediate investiture of title, and of immediate enjoyment of interest to the devisees jointly, deferring only a separate enjoyment, and division to the mother and daughter as devisees, until the daughter should arrive at lawful age or be married.

The defendant, Scott, in his answer, contends, that by the will there was no immediate investment of interest and title, but it was a devise over, to take effect on the happening of a specified event; though the will shows no particular estate created in the mean time for any one's use, or to support the remainder over until the happening of the contingency, &c.

The intention of the testator is the essential criterion in construing a will.

First, then, we urge, that the testator's intention is manifest in the first clause of the will, to dispose of all his estate. His language is, " As touching such wordly estate wherewith it has pleased God to bless me in this life, I devise and dispose of the same, as follows," &c.

[Scott *et al.*, Appellants, *v.* James *et al.*]

" Such estate" as acquired in this life, is all the estate the testator could have had; and such he says, " I devise (I *do* devise—I do *now* devise) and dispose of the same." That is, he disposes of the same, and all such, and leaves nothing undisposed of. This evident intention of disposing of all his estate, is always resorted to as evidence of intention in construing other parts of the will, where an interpretation is contended for, which would regard a portion of the estate as undevised.   1 Johns. Cha. Rep. 494; 2 Dessausure, 32.

Now if construction obtain that the defendants contend for, then Pressler died intestate as to the usufruct of the estate, until the event happened on which the estate should vest.   Because it is not devised to the executors in trust at all.   It is but a power, a naked power, without title or interest, to keep together, &c.   4 Bibb, 307; 3 Bibb, 350; 2 Johns. Cha. Rep. 1, 527; 2 Nott & M'Cord, 588; Conn Rep. 106; 14 Johns. Rep. 527.

The interpretation asserted for the defendant, Scott, is absurd and unreasonable in this, viz: that if the estate did not vest a joint interest *in presenti* in the devisees, then the testator made no provision for the support of those to whom he devised all his estate, until the period when the daughter should become of age, &c., or, &c.

To avoid results so unreasonable, and so opposed to the manifest objects the testator has proposed to accomplish by his will, a different construction must be sought for than suggested by the defendant, Scott, in his own behalf.

We urge, then, the affirmative presented in the bill, and insist, as the true construction, that the clause referred to was a devise *in presenti* of equal undivided moieties, in which, as of right, by such investment of title, the two devisees would enjoy equally the usufruct, till the time assigned for division.

The right of the devisees of the will, was a vested right in fee, with a contingent and shifting limitation over, and a deferred division of the bequest.   1 Johns. Cha. Rep. 497–8–9; 4 Peters's Rep. 89, 91, 92; Amer. Ch. Dig. p. 534, sect. 43; p. 533, sect. 32.

It is not necessary the language of a will should be expressed in formal words of bequest, &c., but direction to " put them in

possession of two thirds of what I may be worth," will carry the title.  1 Johns. Cha. Rep. 155.

If any question should arise as to the fact of Robert James, the complainant's father, having had such possession of his wife's undivided share under Pressler's will, as would permit his marital rights to attach, and inheritance pass to his children, it is sufficient to say, that his possession is admitted by the answer, to have been, during coverture, in right and claim of husband, and as the property was not divisible under the will during his life, he possessed and enjoyed, in the fullest manner in which the condition of the property was susceptible.  1 Wash. Rep. 30;  6 Munford, 70;  2 Munford, 501;  2 Call's. 491, or 412;  2 Kent, Comm. 143.

We conclude, therefore, the decree of the chancellor is correct, and should be affirmed.

Mr. Chief Justice Sharkey delivered the opinion of the court.

The first ground of defence must rest upon the true construction of the will, and the manifest intention of the testator must govern in giving that construction.   There is nothing in the will which shows that the testator intended to give the legacies only on the happening of a contingency.   The direction was confined to the possession, and not to the right of property.   It was a mere direction to the executors that the property should be kept together for a certain time, previous to division.   It is distinguishable from those cases of contingent legacies, which are to take effect only on the happening of the contingency.  If he had left so much to his daughter on her coming of age, she could have had no right until she was of age, but a fair construction of the will gives a vested legacy to be divided *in futuro.* . The testator professed in the outset to dispose of his property, but as his child was then young, prudential considerations may have moved him to direct that it should be kept together until she became of age.   It was no doubt the testator's wish that his wife and daughter should remain together until the daughter should marry, and that object was most likely to be accomplished by directing that the property should be kept together.   It is to be presumed that the testator

[Scott *et al.*, Appellants, *v.* James *et al.*]

did intend to make an immediate disposition of his property, and that none of it should lie dormant, and that nothing was to be postponed except the division.    The case of Roberts' Executor *v.* Brinker, 4 Dana's Rep. 570, is an authority in point.    The case was very similar to this: the executors were directed to retain a portion of the estate until certain children became of age or married, and then to give it to them; and that was held to be a vested legacy.    The court said, that a slight circumstance would be sufficient to show that a legacy was intended to be vested and not contingent.    It was evidently the general intent of the testator to give an immediate interest in his property to his wife and daughter, and that intent being more important than a particular intent must prevail. 4 Kent's Comm. 534, note.    Hence, we conclude that the wife had a vested legacy in the property, and that her second husband James, acquired a right to it by marriage.

But, it is said, that he never reduced the property to possession, and, therefore, that it survived to the wife and passed to her third husband Scott, on the marriage.    It is charged in the bill, and admitted by the answer, that James took possession of the property on his marriage with Mrs. Pressler, and continued in possession until his death, and it is agreed between the counsel, by written agreement filed, that James claimed the property of his wife in his own right by virtue of the marriage.    This was undoubtedly the highest act of ownership, and a sufficient possession to consummate his right.    It was all that he could have done, because by the will the property was to be kept together and not divided until the daughter became of age or married.    He was not, therefore, chargeable with laches, and although he was administrator, after the letters of the executor were revoked, yet his election to take in the capacity of legatee was fully shown; and even if such election had been clearly implied it would seem to be sufficient.    Clearly it is sufficient when expressed and acted on.    Wallace *et ux. v.* Talliaferro *et ux.*, 2 Call, 376.    The complainants, therefore, inherited from their father two-thirds of their mother's half of Pressler's property, which was equal to two-sixths or-one third of the whole.

The chancellor having so decreed, his decree must be affirmed.